Good morning, Your Honors. May it please the Court, in 2012 a non-attorney in his 20s brought a pro se lawsuit alleging that he was illegally detained by TSA screeners in South Florida. The law only allowed him recourse if TSA screeners constituted an officer of the United States who was empowered by law to execute searches, to seize evidence, or to make arrests for violations of federal law, which is why we're here. In 2014, this Court said that TSA screeners don't qualify, ending that case. That non-attorney 20-something went to law school, graduated in 2018, admitted to the bar in 2019, and since then five other circuits have decided the same issue, all of which have gone the other way. And that person personally argued the issue in three of the five courts and is now binding precedent in 29 states, three subject to that intentional tort liability. Today, that 20-something is now 40 and standing here before you asking this Court to correct that error that it made in 2014. The 2014 Court didn't have the benefit of an appellant with legal training, didn't have the benefit of oral argument, relied upon out-of-state district court opinions that were later overturned by their respective circuits, and the holding of this Court that TSA screeners are not officers of the United States is currently accepted nowhere but the 11th Circuit. Luckily, the Court's 2014 ruling was unpublished and non-precedential, so the district court could have taken notice of the shift in legal backdrop and corrected this Court's error itself. But shockingly, the district court did not cite any of the out-of-circuit precedent in its opinion, again, all of which went the other way, and instead adopted the unpublished logic of this Court from 2014. What do you think is the, from your perspective, what is the cleanest way to approach the statutory issue? The cleanest way is that Congress used words that are easily understandable to execute searches, and to say that a TSA screener doesn't execute searches when their job is literally to do nothing but execute searches. All they do is search bags and people all day long. That's a tortured reading of this statute. I think the statute is very clear that it's not speaking just of law enforcement officers. It could have said law enforcement officers and saved a whole lot of words, but it says it's looking at investigative or law enforcement officers. Can I ask you a question? The way the government wants us to read it is to say that, to the degree that TSA is performing administrative searches, that that somehow makes a difference because the term searches should only be a criminal search. Exactly. The government seems to want this Court to imply the word criminal throughout the statute, but it says execute searches underneath the word searches. It says execute searches for violations of federal law, but it doesn't say federal criminal law. Correct. Searches contains administrative searches and criminal searches and all kinds of searches. Congress could have said for violations of criminal law. They have cabined other statutes to that narrower definition, but clearly didn't. They used all these words because they wanted more than just FBI agents to be included here. Your Honor, the TSA screeners that are in question hold the title Transportation Security Officer. They wear badges by the Department of Homeland Security that say U.S. Officer on the badge. If you disobey a Transportation Security Officer, you're subject to a fine of up to $16,000. They have the right to detain your property, to search it inside and out, and to briefly detain you while you're at that checkpoint and to search you, including over the most intimate areas of your body. These are precisely the kind of government agents that Congress intended to cover when it wanted to say law enforcement and other people who do these kinds of things, that is execute searches. My colleague's going to get up here and argue that all five sister circuits that decided this issue got it wrong. Two of those decisions were unanimous. One of them was unbanked and decisively decided 9-4. Twice more, the government failed to petition for re-hearing. And all five times, the government never petitioned for certiorari. At the end of the day, the government praised that the court is simply too stubborn to correct the 2014 decision. But again, that decision was made without the benefit of counsel or oral argument or the 11 years of development of case law in between that was especially notable for shifting liability for the misconduct of federal officers away from Bivens-style remedies, which were all but destroyed a couple years ago, towards statutory remedies like the FTCA. And essentially, here it's all or nothing. If the court doesn't allow FTCA remedies, there are no judicial remedies against TSA screeners. So TSA misconduct, no matter how egregious, no matter how intentional, there's no remedy. Okay. Are you familiar with a decision of the former Fifth Circuit, EEOC versus First National Bank of Jackson? I'm not sure I am, Your Honor. That case holds. It's the citation is 614 F. 2nd. 1004. The relevant pinpoint pages are 1007 and 08. In that case, the former Fifth Circuit held in a published opinion that EEOC agents do not come within the law enforcement proviso. I was going to ask you about that case, but if you haven't, you're not familiar with it. I can speak generally towards that. So there have been certain classes of people that have been excluded. One of them was agricultural inspectors that are going in and inspecting maybe a meat plant or something like that. The difference here is that TSA screeners, first of all, do nothing but search the public and are doing it up close, impersonal with people and are therefore likely to commit the kinds of torts that are covered by this intentional tort claims act. So the idea, for example, that an EEOC inspector or an agriculture inspector will commit a battery during their job is pretty far-fetched. But the idea of someone that's literally placing their hands in the bodies of the public all day long might do so is not far-fetched. That's the kind of employee, the kind of thing that the government was trying to fix here at the Congress. The Jackson case, in my personal opinion, is distinguishable because in that case, the former Fifth Circuit panel explained that based on the statutory language at the time, EEOC agents didn't have the authority to conduct searches. It differentiates it from this case. Yeah. The authority of these people is certainly much more limited. They don't have the right to go into a business and hold people until they comply and so forth. TSA does. They do end up essentially affecting a detention of the person and their belonging. It's not hard to visualize this as executing searches, whereas someone who's doing an inspection for EEOC and agriculture, it's not really what you think of. In some cases, you can envision TSA agents either conducting a detention or even a preliminary arrest for, let's say, someone who's trying to bring a firearm onto a flight without checking it. Even though they have a license to carry it, that person's not going to be allowed to go past TSA screening to figure out what in the world is happening with that firearm. Absolutely correct. To be clear, TSA screeners don't make that arrest. They call law enforcement, but the property is detained. But you can detain the person. Certainly. The property is detained. The person can't leave the checkpoint if they do. They're subject to that $16,000 fine that I mentioned. Fourth Amendment seizure, supposedly. The detention. Absolutely. The question is whether it's unreasonable or not, but it is a seizure. Absolutely. I think to say that it's not a seizure is, again, torture of this statute that talks about executing searches and seizures and so forth. To me, saying that TSA screeners don't do that, it's like you wish the word criminal were there, but it's not. I agree with you on that. Holding for the government here would create a five-to-one circuit split with the Eleventh and all those five. But this case really presents no good reason to deviate from them. Holding for the government, again, would completely immunize TSA from all misconduct, no matter how blatant, no matter how serious the injury. That's not justice. That's not fairness. There's no reason in the world to conclude that's what Congress intended when it wrote this law enforcement proviso. My client here was unlawfully strip searched. She was taken in a back room where a TSA screener used their own hands to remove her clothing. That's an egregious search, and that person deserves some kind of judicial recourse here. And just to be clear, the lower court here did not do a reasoned consideration of the statute. They just followed our Corbett opinion. Correct. At the time of argument, there were three circuit courts that went the other way. Before the decision was made, a fourth one did, and afterwards, a fifth one did. That didn't speak of any of the out-of-the-circuit decisions that were argued by both sides, and I don't know why. It also didn't speak of Dolan, which is the case that said that for sovereign immunity, although we usually construe it strictly, for the FTCA, we construe it broadly. I don't know why the court didn't look at those things, but it should have. For these reasons, I ask that the court reverse the court below and allow people who are injured by TSA screeners to have a remedy. All right, Mr. Corbett. Thank you. You've saved your time for rebuttal. Mr. Aguilar. Good morning. Daniel Aguilar for the United States. So I think this case comes in a couple of different analytical steps. And just to place them in boxes is one is just the fair contextual reading of the statute. Two is applying all the canons of statutory interpretation to determine But we don't apply canons of statutory construction normally when the text is unambiguous, correct? So you apply the—something can be ambiguous on its face, but after the enclosed textual examination, you can discern its best reading and proper meaning. I mean, that's sort of what Chevron is saying. But you have to assume that this is ambiguous, and I don't—I mean, how is it ambiguous? No, no, no. Let me clarify. I'm not saying that this is ambiguous. I'm saying, one, on first blush, when you're talking about investigative or law enforcement officers who are empowered by law to execute searches, seize evidence, or make arrests for violations of federal law, talking about that in common parlance, a person's going to think of a law enforcement officer, an FBI agent. If you're then focusing, as Your Honor did, on execute searches, I think for the same reasons that Judge Krause in her Pellegrino dissent, that, too, connotes a law enforcement example. Why would you need to use investigative? If you wanted to just do law enforcement, then Congress would have just used the word law enforcement. Sure. It's because there are some investigative people who lack the power to make arrests, and you might not think of those as a traditional, canonical law enforcement— Correct. So they're not law enforcement officers. They're investigative officers who execute searches. But execute a search doesn't mean it has to be a search for purposes of a criminal search. So I disagree with that. And just to give you an example of somebody who is going to be an investigative or law enforcement officer, but not somebody who conducts administrative searches, I'd point you to the Seventh Circuit's decision in Bunch v. United States. That's a case where the Seventh Circuit was considering an ATF forensics examinator who had statutory authority to enter onto the sites of fires if there was reason to believe that an explosive had been used, i.e., searching for evidence of violations of the laws that the ATF administers. The Seventh Circuit said, if that's how that person is empowered by law, they very well might be that kind of investigative person who can do that, executing searches, because there's a reason to believe there was a crime committed. That's not what TSA screeners do. And I know there seems to be a factual on the world understanding, well, maybe they can stop you, maybe they can detain you. TSA screeners are not empowered by law to detain anybody, to execute it. But they're entitled to execute searches. When you put your luggage through the screening machine, whatever it might be in a given airport, and a TSA screener is using modern technology to see what is inside of your suitcase, that is a search, is it not? It is a search in the Fourth Amendment sense, as Judge Joflat was saying. In any sense. No, I would disagree with that. What do you think the screener's doing when he's looking at your luggage? So, you can't colloquially call it a search. What I would point you to on this . . . No, what do you think he's doing? He's inspecting it to see whether or not you were bringing on items . . . Inspection is another word for a search. You inspect sometimes by searching. Inspect a boat. If I may, Your Honor, I would direct you to Judge Crouch's dissent in Pellegrino, where she's saying, let's examine this in isolation, the term execute searches. At the time that the law enforcement proviso was enacted, the relevant statutes that Congress enacted using the term execute searches. The relevant Supreme Court and Court of Appeals cases using that term. We're all talking about investigative searches for violations of criminal law. This doesn't say violations of criminal law. It says violations of federal law. Yes. And so, to that point, what I would also say is, that's the canon of nascitur, also cease, right? We can read a word in isolation or a term in isolation, and it can have one meaning. But then, read against the other items in that list. Make arrests is obviously something that can only be done for violations of federal law. That narrows the scope of what that original term means, and that's the analysis that this court used in its Peresky decision, saying like, well, under the tax laws, a district court could have jurisdiction over any sum that was excessive. Well, maybe that includes interest payments, right, that weren't made because the government was withholding your taxes. But this court. So, if a TSA agent, let's use the firearm example. A TSA screener determines that you have a firearm in the luggage that you are trying to take on board as a carry-on, which is generally a no-no, right? Correct. Okay. And says, I need to take a look at this more closely and ask you what you were doing with this firearm. You try to take your luggage away. Is the TSA screener empowered to prevent you from taking it away and seize it? No. That is when they have to call the police over, and that's why. So, they let you walk away. When Congress enacted the TSA. Answer the question, please. Can he walk away? I can take my luggage. He says you have a firearm. That's illegal. You're not a U.S. Marshal. By law, they are not empowered to stop or detain you. My question is that the person can take the, if I'm that person, I can take my luggage with the firearm and say, thank you very much for your service. Have a good day. I'm taking this and going to my flight. And no TSA officer can do anything about that, except make a phone call. If you're saying, like, as a factual example, would somebody exceed their role that they are lawfully empowered to do and try to act as a good Samaritan to save lives, I could expect that somebody might do that. You're telling me that legally they are not allowed to seize the gun. No. And so, to make that. They have to let you walk away with it. By law, they're not authorized to do that. If I could just. What's the best statutory or regulatory provision that says that? It's this court's decision in Corbett that analyzes the particular statutory. Give us the statute that you rely on. You're not defending Corbett's rationale. Yes, we are, Your Honor. You've walked away from that rationale. No, we are defending. Corbett says that a TSA employee, a TSA screener, is not an officer because he or she is an employee. That's not the argument you're making here. This point goes to Your Honor's question about the statutory authority. Okay, tell me. I'll let you make the argument because you're here advocating on behalf of the government and nobody wants to cut you off. But answer this first question. Is there anything in the U.S. Code or the relevant regulations that say that a TSA screener is not allowed to seize contraband like that when a person having it is trying to walk away? Yes. Okay, tell me what that is. It's the distinction between TSA screeners as employees, which is 49 U.S.C. 44901A. What does that say? What that says is the TSA administrator shall provide for the screening of all passengers and properties and that shall be carried out by a federal government employee as defined by Title V. That doesn't tell me anything about the ability to seize property or not seize property. And then that is distinguished by the separate statutory authority for TSA law enforcement officers, which is 49 U.S.C. 114P. And that is the reasoning of this Court's prior decision in Corbett. Has the Secretary or the Department published regulations that delineate the extent and limits of a TSA screener's authority? Yes. Generally, there are standard operating procedures that TSA has... Do any of those limit the ability of a TSA screener to seize contraband evidence like a gun that is going to be taken on board a flight illegally, presumptively illegally, on carry-on luggage? I do not know that those standard operating procedures specifically limit their authority to do so because... In my personal opinion, I think you've got a problem. I disagree with that, Your Honor, because I would direct you... No, I don't agree with you. I'm telling you where I stand. I understand. And so to allay your concern, I would direct you to the law enforcement proviso's text itself because instead of saying, is there a law that prohibits you from engaging in these actions, right, it's talking about, for the purpose of this subsection, the investigative or law enforcement officer means any officer of the United States who is empowered by law. So let me ask you a question because there are certain things where it says violations of federal law, and I believe that there are regulations that say that you can't carry liquids onto an aircraft that are over three ounces, correct? I believe that that's what the regulations say. So a screener, if you're passing through and you have in your bag the dreaded water bottle filled with liquid, that water bottle is taken and discarded by the screener, correct? Or the person is given the option to dispose of it themselves or return it to their car or give it to somebody else who isn't traveling. And if you have a perfume bottle that's over four ounces, that also would be discarded by the screener? It could be, or the other alternative disposal options are available. But again, if I say I don't want to throw it away, what happens? Am I allowed to proceed and go through? I think at that point, if they say you need to discard it, you say no, then that's when they call over the police officer to handle that, specifically because there is a security concern that if somebody is potentially intentionally creating a distraction for the security line, the TSA screeners need to be focused continually on the screening, and then the police officer will come over and determine whether or not there's been any violation of law that needs further investigation or enforcement. And that's why, just to take a step back here too, you all understand from our brief, we think that there are multiple textual and disjunct clues here that says this is talking about people who were the subject of the law enforcement proviso to begin with, right? The Department of Justice agents that were conducting no-knock raids into people's homes. That's what Congress was concerned about, and it devised this proviso to apply to them. Outside of the TSA context, as Your Honor noted in EEOC versus First Bank of National Jackson, in the Solomon decision from this court, in the Wilson decision from the Second Circuit, those are all contexts where somebody lacks the authority to make the arrest, seize evidence for criminal violations, execute the criminal searches. Even for somebody like a parole officer who was at issue in Wilson, there the courts are saying you're not a traditional law enforcement officer, you're not covered by the proviso. And everyone else who has been a traditional law enforcement officer, border patrol officer, Bureau of Prisons Guard, et cetera, has been held to qualify. It's only within the TSA context that somebody who is only authorized to make an administrative search, lacking any of the other indicia of being a law enforcement officer, has been concluded . . . Except for their badges and the office . . . So I think, as my friend noted, for the USDA inspector, right, they similarly may have a badge that they're an officer of the USDA, they conduct a meat pack, plant inspection pursuant to statute. I understand that, but the government has made the decision to put in front of the public these TSA officers as officers with badges that say officer. Correct? That's what the public face is for the TSA. Correct. And I would also note, Your Honor, if somebody is an officer with a badge who is trying to handle things, but lacks the authority that the law enforcement proviso is talking about, I think this court would have no trouble holding, well, they lack that authority, therefore the fact that they may be called an officer and have a badge is not as positive. To give an analogy, right, the Smithsonian Museum . . . Except that we have a disagreement, I think, you and I. You believe that what they do is not executing searches. And so even if we're . . . They're just screening. We can disagree on that, Your Honor. And you might say that there is an alternative reasonable reading of the statute that would say that these people should qualify as law enforcement officers. It doesn't . . . The statute says investigative or law enforcement officers. Yes. I mean, you like to focus on law enforcement officers, but it could also be investigative officers, which is clearly what they are because they're screening. They're screening luggage and they're screening individuals. And what I would say, Your Honor, is yes, it also includes investigative or law enforcement officers. What this court has continuously held is that the waivers of sovereign immunity within the Federal Tort Claims Act must be strictly construed. I know, but that goes right against Dolan. And I think the way to reconcile this court's cases with Dolan is to say that the exceptions generally, but this court and Zelaya, Dotson, and Smith has continuously held that and that's the applicable framework. When the United States is reclaiming sovereign immunity, saying we're not going to waive immunity for intentional torts, that's fairly construed. You don't need additional canons of construction. When Congress makes the decision to then re-waive sovereign immunity, right, there's no question that for intentional torts generally, the United States is immune. When Congress waives that immunity for the case of investigative or law enforcement officers, that is a waiver of sovereign immunity. Why do we need to slice and dice the FTCA that way when the Supreme Court has told us that the Federal Tort Claims Act is just simply not strictly construed? For two reasons, Your Honor. The first is that this court's cases continuously hold that it is strictly construed. But the other is that as the Supreme Court's explained, right, we don't read statutes in little bites. The reason that we're asking this court to engage in that close textual analysis of it is because all the parts are reinforcing each other. It's talking about violations of federal law. It's talking about executing searches. It was enacted against this. Those textual indicia reinforce each other and provide that. We think it's the best reading. Obviously, this court can disagree with that. But so long as it's a plausible reading, as the Supreme Court explained in FAA versus Cooper, so long as there's a plausible reading that retains immunity for the United States, that's what the court should construe the statute to be. The police officer who comes when the screener summons him is subject to suit. Yes. Yes. So if you sued the police officer, you probably include all the things that happened antecedent to that. Factually, that would probably matter in terms of like what information did they have, et  cetera. That's the line that Congress can choose. It can choose to empower somebody with these authorities, and it can choose to empower other people to act in a less intrusive, less law enforcement or investigative officer who's empowered by law to do these particular actions. One last question. This is a question we've got to decide ourselves, of course, but I would like your thoughts on it. Given where the other circuits have landed, why should we create a circuit split? When this court has been faced with similar instances where a number of different circuits have held that actually the United States has waived sovereign immunity, and this court has said we find that the better reasoning is on the other side, and that's this court's decision in Shivers holding that the discretionary function exception applied in an application of the Federal Tort Claims Act, it went ahead and disagreed with four other circuits because it held that although that is the overwhelming majority view, and they're all consistent with each other, we find that applying the usual canons here of construing the statute that the United States has not waived sovereign immunity for that kind of action. In other cases, the forfeiture case we cited, the court noted that the reason that those courts got there was because they were largely ignoring the sovereign immunity problem. We think that's applicable to the decisions of the other courts. They've either said the canon of strict construction doesn't apply at all, or they've said although the government has a number of different textual indicia in its favor, we disagree with each one of those, and therefore we don't reach it at all. We think the fact that there are multiple indicia itself is a sufficient reason to show that this is a reasonable and at least a plausible reading of the statute. All right. Thank you very much. Thank you. I'll be brief. I just wanted to address one thing. It doesn't really matter if TSA can seize things because they execute searches, and only one of the searches seizes an arrest is required, but as a hypothetical, if I, on my way home, place a gun in my bag and walk through a TSA checkpoint, does anyone really think that TSA is going to give me that gun back? And if they don't, do I now have a lawsuit for the unlawful seizure of my property? I would be laughed out of court. TSA obviously has the ability, the lawful authority to seize that evidence at least briefly until a law enforcement officer comes. These TSA screeners are clearly the type of investigative officer that Congress intended this statute would cover. Mr. Aguilar suggests in part that we have to look at the empowered by law language in the proviso, and unless there's something expressed that lets a TSA screener do these sorts of things, then his reading of the statute, the government's reading of the statute, may be plausible. Yeah, and as to executing searches, the law is very clear that TSA is empowered to do that. The statute that creates the TSA, their enabling act, goes between using the word searches and inspections and screening and what have you. But at the end of the day, these TSA screeners are charged by that federal law as well as TSA's regulations implementing the law to search passengers. To say that TSA is not empowered by federal law to search passengers, again, is torture of the statute. Okay. Thank you. Both very much.  Hold on for one second. Our last case is number 24.